IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CHARLES BURRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-cv-90 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on the petition for judicial review of the decision of the Commissioner filed on March 29, 2013. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Charles Burrell, filed an application for Disability Insurance Benefits on November 2, 2010, alleging a disability onset date of September 17, 2009. Burrell's application initially was denied and was denied upon reconsideration on February 24, 2011. He then filed a request for a hearing. A hearing was held on November 14, 2011, before ALJ Warnecke Miller. (Tr. 22) Burrell and Vocational Expert Robert S. Barkhaus testified at the hearing.

On December 16, 2011, the ALJ issued a decision denying benefits. At step one of the sequential analysis for determining whether a claimant is disabled, the ALJ determined that Burrell had not engaged in substantial gainful activity since his alleged onset date. (Tr. 24) At

1

step two, he determined that Burrell had the following severe impairments: a seizure disorder, osteoarthritis, degenerative disc disease, and history of Reynaud's phenomenon. (Tr. 24) At step three, the ALJ concluded that Burrell did not have an impairment or combination of impairments that satisfied a listed impairment. (Tr. 25)

The ALJ next determined that Burrell had the residual functional capacity to perform light work with some additional restrictions. In reaching this conclusion, the ALJ first summarized Burrell's testimony. Burrell stated that he could stand for one hour before his ankle began to ache and could walk about 100 yards. (Tr. 26) He experienced pain in his shoulders, ankles, and back. (Tr. 25) He testified that he could not work because he had seizures and was afraid to drive. (Tr. 26) Burrell stated that he experienced numbness in his hands while doing or just after doing dishes and that he could do dishes for 15-20 minutes before having to stop. (Tr. 27) He had not talked to his doctors about his hands around the time of the hearing, and in the past he was told to take Tylenol. (Tr. 27)

The ALJ next stated that he found Burrell's medically determinable impairments could be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. 27) The ALJ explained that the MRIs of his spine did not show evidence of cord impingement of the cervical or thoracic spine. (Tr. 27) Burrell had a fractured ankle that required surgical repair, but the record revealed that it healed. (Tr. 27)

The ALJ then discussed the results of the consultative physical exam, which suggested that Burrell could not perform more than a limited range of light exertion. (Tr. 27) Dr. H.M. Bacchus noted that Burrell had poor heel and toe gait on the right but that the left was intact.

2

(Tr. 27) He could squat halfway down, could not hop on his right foot, and had some deficits with range of motion in his right ankle. (Tr. 27) His gait was steady, and his sustainability was fair to good. (Tr. 27) The ALJ stated that this was his basis for finding that Burrell could stand/walk for 6 hours per day. (Tr. 27)

Dr. Bacchus also noted that Burrell's muscle strength and tone were 3/5 in the right upper extremity, 4/5 in the lower right extremity, and 5/5 on his left side. (Tr. 27) His grip strength was 3/5 on the right and 4/5 on the left, and his fine and gross dexterity was slower in nature but intact. (Tr. 27) The ALJ stated that this was his basis for finding that Burrell could not do any overhead reaching with his right upper extremity but that there was no reason to find any limitations with handling and fingering. (Tr. 28) The ALJ further explained that there was sensory dullness to sharp and dull in the distal fingers and toes, no atrophy, spasms, or tremors, and a negative Romberg. (Tr. 28) Dr. Bacchus believed that Burrell might benefit from physical therapy on his shoulder. (Tr. 28) The ALJ stated that he gave Dr. Bacchus' observations moderate weight. (Tr. 28) The ALJ also stated that he gave moderate weight to the state agency reviewing physician's opinion that Burrell should not lift or carry more than 20 pounds occasionally and 10 pounds frequently with no overhead reaching on the right, no ladders, and no concentrated exposure to hazards because this opinion was consistent with Dr. Bacchus' findings. (Tr. 28)

The ALJ then summarized the treatment records from Dr. Atiya Khan, Burrell's neurologist, and Dr. Thomas Miller, who treated Burrell for Reynaud's phenomenon. (Tr. 28) The ALJ also recognized that Burrell had sought treatment for pain, tingling, and numbness in his hands at the Cameron Hospital ER. (Tr. 28) Burrell's physical examination was negative for

3

musculoskeletal issues, he was diagnosed with Reynaud's syndrome, and he was told to avoid the cold. (Tr. 28) This is the reason the ALJ limited Burrell from exposure to the cold in his RFC determination. (Tr. 28)

At step four, the ALJ determined that Burrell was not capable of returning to his past relevant work. (Tr. 29) At step five, the ALJ determined that there were other jobs in the national economy that Burrell could perform, including the light jobs of small products assembler (3,000 jobs regionally) and laundry folder (200 jobs regionally), and the sedentary jobs of addresser (200 jobs regionally), order clerk (200 jobs regionally), and telephone clerk (100 jobs regionally).

Burrell filed his petition for judicial review with this court on March 29, 2013, arguing that the Commissioner failed to account for his Reynaud's syndrome, did not assign the proper weight to Dr. Bacchus' opinion, and erred when rendering her credibility determination.

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Kastner v. Astrue***, 697 F.3d 642, 646 (7th Cir. 2012); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852, (1972)(*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S.

Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* **Shideler v. Astrue,** 688 F.3d 306, 310 (7th Cir. 2012)*; Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); **Sims v. Barnhart**, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. **Roddy v. Astrue,** 705 F.3d 631, 636 (7th Cir. 2013)*; Rice v. Barnhart*, 384 F.3d 363, 368-369 (7th Cir. 2004); **Scott v. Barnhart**, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

**42 U.S.C. § 423(d)(1)(A)**.

The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520.** The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 404.1520(b).** If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is

acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e).** However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).**

Burrell first argues that the ALJ failed to account for his manipulative limitations caused by his Raynaud's disease. Although the ALJ limited Burrell to jobs that did not expose him to extreme cold, Burrell complains that the ALJ identified jobs that required frequent handling and fingering. This conflicts with his testimony that he could use his hands for two hours per day and Dr. Bacchus' notes of decreased grip strength, sensory dullness, and slow dexterity.

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must

also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. *See* **Morphew v. Apfel**, 2000 WL 682661 at *3 ("There is a distinction here [in SSR 96-8p] between what the ALJ must consider and what the ALJ must articulate in the written opinion."); **Lawson v. Apfel**, 2000 WL 683256, *2-4 (S.D.Ind. May 25, 2000) (ALJ who restricted the claimant to medium work satisfied the requirements of SSR 96-8p)("[SSR 96-8p] does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities.").

The ALJ acknowledged that Burrell suffered from Reynaud's disease. However, he concluded that there was no reason to find any handling or fingering limitations. The ALJ first summarized Burrell's testimony, noting that "*sometimes* he has numbness in his hands". (Tr. 27)(emphasis added). Burrell had not talked to his doctors about his hands around the time of the hearing and in the past he took Tylenol only. The ALJ also summarized the medical evidence related to Burrell's manipulation. He had 3/5 muscle strength and tone in his right upper extremity, 4/5 in his lower right extremity, and 5/5 on his left side. His grip strength was 3/5 on the right and 4/5 on the left. His fine and gross dexterity was intact, but slower in nature. After noting the results of his medical examination, the ALJ determined that there was reason to limit Burrell from overhead reaching but no reason to find any handling or fingering limitations. The ALJ was clear that Dr. Bacchus' opinions governed his decision. It was because he retained

7

greater strength is his lower extremity and because his fine and gross dexterity was intact that the ALJ did not find any greater limitations. Burrell has not identified one medical opinion that imposed greater limitations. The only limitation made by a medical source in conjunction with his Reynauld's Syndrome was that provided by the emergency room physician who told Burrell to avoid extreme cold, as the ALJ adopted. The record was devoid any significant treatment or any opinion by either Burrell's treating physician or the state consultative physicians indicating that greater restrictions were necessary.

The only evidence that contradicts the ALJ's conclusion was Burrell's own testimony, which the ALJ determined was not credible. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007); ***Prochaska v. Barnhart***, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a); *Arnold v. Barnhart***, 473 F.3d 816, 823 (7th Cir.2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant was complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529**(c); *Moore v. Colvin, 13-2460; Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also **Moore v. Colvin, 13-2460; Indoranto v. Barnhart***, 374 F.3d 470, 474 (7th Cir. 2004); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

9

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see also* ***Zurawski v. Halter***, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." **SSR 96-7p, at \*2**. *See Zurawski*, 245 F.3d at 887; ***Diaz v. Chater***, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must "build an accurate and logical bridge from the evidence to [her] conclusion." *Zurawski*, 245 F.3d at 887 (*quoting* ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting. *See Zurawski*, 245 F.3d at 888 (*quoting* ***Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

Burrell complains that the ALJ did not consider his extensive work history, complaints, limited activities of daily living, or the precipitating or aggravating factors of his pain. Burrell challenges the ALJ's use of boilerplate language, arguing that the ALJ failed to construct a logical bridge. Although the ALJ did not engage in a lengthy discussion, he did address the factors Burrell identified. The ALJ noted that Burrell had a broad range of daily activities and ongoing social contacts and that he lived independently. Earlier, he summarized Burrell's activities, noting that he watched sports, hunted, fished, and did his own dishes and laundry. He further noted that he reported performing activities during the day at the light level of exertion, including driving a car, using a riding lawn mower, and using farm equipment. Following the credibility boilerplate, the ALJ also explained his reasons for discounting Burrell's complaints of pain. He noted that he took over the counter pain medication and that the medical evidence did not support the functional loss to which he testified. He also summarized Burrell's testimony, including that related to pain and aggravating activities. Under step 4, he further noted Burrell's work history.

The record reflects that the ALJ considered all of these elements, although he did not explain them cohesively in one place. However, the ALJ considered the record as a whole and provided explanation of the strongest reasons to support his determination. He need not engage in a thorough discussion of each element, but only must provide an explanation in a way that affords meaningful review. The ALJ has done so by relying on the inconsistent medical evidence and Burrell's daily activites, and Burrell has failed to show that his credibility decision was patently wrong. Because the ALJ has supported his credibility determination adequately and Burrell has not identified any additional evidence of record to show that his Reynauld's

syndrome was more limiting than the ALJ determined, the court **AFFIRMS** the Commissioner's decision on these issues.

Burrell also argues that the ALJ failed to consider or specify the weight given to Dr. Bacchus' opinion. Dr. Bacchus stated that Burrell may benefit from physical therapy on his right shoulder and may have difficulty with repetitive pushing, pulling, lifting, and reaching involving his right shoulder. The ALJ adopted Dr. Bacchus' opinion that Burrell may benefit from physical therapy, but he did not address the pushing, pulling, lifting, and reaching limitations or provide any explanation for his decision not to adopt these limitations.

Although Burrell argues that the ALJ did not designate the weight he assigned to Dr. Burrell's opinion, review of the record shows that the ALJ stated that he gave Dr. Bacchus' opinions moderate weight. Burrell also argues that the ALJ ignored Dr. Bacchus' opinion that Burrrell "may have difficulty with repetitive pushing, pulling, lifting and reaching involving his right shoulder." The court disagrees. The ALJ adopted Dr. Bacchus' opinion that Burrell could not do any overhead reaching because of his shoulder but explained that no further limitations were necessary given Dr. Bacchus' findings regarding muscle strength and tone, grip strength, dexterity, and the consistency of the reviewing physician's opinion with the ALJ's ultimate conclusion.

Burrell also complains that the ALJ did not adopt Dr. Bacchus' lifting limitation or provide an explanation. Again, the ALJ adopted a limitation consistent with Dr. Bacchus' opinion. Dr. Bacchus stated only that Burrell may have some difficulty with lifting. The ALJ limited Burrell to lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently, explaining that this was consistent with the state reviewer's opinion and Dr. Bacchus' objective findings, again referring to the strength and tone results and other findings.

Moreover, Dr. Bacchus did not state that Burrell could not lift for any duration. The ALJ identified both light and sedentary jobs. Sedentary jobs involve lifting no more than 10 pounds at a time and lifting these items only "occasionally". Occasionally means up to one-third of the time. **SSR 83-10**. Burrell has not shown how the ALJ's limitation to occasional lifting is inconsistent with Dr. Bacchus' opinion that he *may* have difficulty lifting.

The ALJ did not place any restrictions on Burrell's ability to push or pull. The Commissioner argues that light jobs do not require repetitive pushing and pulling, and therefore Burrell has not identified a conflict between the ALJ's finding and the activities Burrell argues he overlooked. The ALJ restricted Burrell to light work, which is defined as work that "requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." **20 CFR § 404.1567**. It is not clear whether jobs that require "some" pushing and pulling are consistent a limitation against "repetitive" pushing and pulling. However, the court need not resolve this. The ALJ also identified sedentary jobs that someone with Burrell's RFC could perform. Sedentary jobs are those that involve "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." **20 C.F.R. § 404.1467**. By definition, sedentary work does not require pushing and pulling. Therefore, even if the ALJ erred in finding that Burrell could perform light work because he has restrictions with pushing and pulling, this error was harmless because sedentary jobs were available despite the restriction on pushing and pulling.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

ENTERED this 7th day of July, 2014

                                                          /s/ Andrew P. Rodovich
                                                          United States Magistrate Judge